**SUGAR CREEK PACKING, INC., Plaintiff,**

v.

**AMALGAMATED FOOD AND ALLIED WORKERS DISTRICT UNION 430, AFL–CIO, Defendant.**

No. C–3–80–355.

United States District Court, S. D. Ohio, W. D.

Oct. 5, 1981.

Edward B. Mitchell and Laura M. Franze, Dayton, Ohio, for plaintiff.

Ray E. Schmidt, Dayton, Ohio, for defendant.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO DEFENDANT; ENTRY OF JUDGMENT; TERMINATION ENTRY

RICE, District Judge.

## I. Introduction

This matter is before the Court pursuant to cross motions for summary judgment filed by Plaintiff Sugar Creek Packing, Inc. (hereinafter Sugar Creek), and the Defendant, Amalgamated Food and Allied Workers District Union 430, AFL–CIO (hereinafter Union). Both parties have filed memoranda and reply memoranda in support of their respective positions, and an oral hearing was held before the Court on December 12, 1980. Accordingly, the issues presented are ripe for determination by the Court.

Plaintiff filed the within action under § 301 of the Labor Relations Act, 29 U.S.C. § 185 (1976), which gives the federal courts jurisdiction of actions against labor organizations. The suit sought vacation of an arbitration award made in favor of the Union.

Sugar Creek operated a bacon processing and packaging plant in Dayton, Ohio, in which pork bellies are first processed through a curing department where they are smoked and cured. The pork bellies are then sent to the Slicing Department to be formed, sliced, sealed, vacuum-packed, and put into boxes. The Slicing Department, employing between seventy and ninety employees per day, is kept at a temperature of fifty degrees or less, due to requirements and regulations promulgated by the United States Department of Agriculture. Employees are advised of the somewhat chilly temperature of the Slicing Department before being hired, and are advised to wear warm clothing. On February 5, 1980, some complaints were made regarding the cold temperature in the Slicing Department; some employees also complained of being ill. The Slicing Department's supervisor informed the employees that the department was not too cold, that leaving because of the cold would be an unexcused absence, but that if the employees were sick, they should bring a doctor's excuse. After these comments, eleven employees left work, and were informed later that day, or the next, that they were being discharged from their jobs for leaving the plant without permission, and for engaging in a wildcat strike.

During the time in question herein, the relations between the Union and Sugar Creek were governed by a collective bargaining agreement, which specified certain

grievance procedures in Article XIV of that contract. After the eleven employees had been fired, they initiated grievances against Sugar Creek through the Union. Pursuant to the contract, the grievances were referred to an Arbitrator, who received testimony from Sugar Creek representatives and employees, as well as from most of the individual grievants, on May 16 and 29, 1980. After hearing the testimony, the Arbitrator concluded that the grievances should be partially upheld. Specifically, he ordered that the eleven employees should be reinstated with full back pay and benefits. The back pay award was reduced, however, by thirty days pay, calculated from February 5, 1980. The Arbitrator also stated that the amount of unemployment compensation received and earnings from other employment should be deducted from the back pay award.

■ After the Arbitrator issued his decision on August 9, 1980, Sugar Creek apparently permitted the grievants to return to work but did not make the back payments granted by the Arbitrator. (Doc. # 6). Sugar Creek then filed the within action on August 28, 1980, requesting that this Court vacate the arbitration award. In the Complaint filed herein, Sugar Creek claimed that the award failed to draw its essence from the collective bargaining contract, was unsupported by the evidence of record, and imposed a penalty damage award against Sugar Creek in violation of Article XIV, Section 6 of the contract. In its Motion for Summary Judgment, Sugar Creek raised the same contentions as had been made in the Complaint, with the exception of the allegations characterizing the Arbitrator's decision as a penalty damage award. The Defendant filed its Motion for Summary Judgment on December 8, 1980, contending that the Arbitrator's decision was correct, particularly in light of the broadness of the provisions in the collective bargaining agreement, which did not prohibit the Arbitrator from substituting his judgment for that of the parties, and did not limit the power or the authority of the Arbitrator.[1]

After an examination of the entire record, the Court has concluded that the arbitration award was drawn from the essence of the collective bargaining agreement, and is supported by evidence in the record. However, before setting forth the reasons underlying these conclusions, the Court finds that a brief discussion of the legal standards applicable herein would be appropriate.

## II. Discussion of Law

■ In *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court established the proper standard for federal court review of arbitration decisions. The Court stated that:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

1. Because the Court has determined that the Arbitrator's Award was premised upon a finding that the grievants were guilty of, at most, an unexcused absence, there is no need to address the Defendant's contention that the Arbitrator is permitted to substitute his judgment for that of the parties. Since the contractual penalty provided for an unexcused absence was plainly not discharge, the Arbitrator's finding that discharge was improper did not constitute a substitution of judgment, but instead demonstrated fidelity to the terms of the collective bargaining agreement. Moreover, to the extent that the Court has assumed for purposes of argument that the employees left without permission, the point had also been made that the

contractual provisions dealing with such violations are ambiguous. The Arbitrator's choice between alternatives would then be in accordance with Sixth Circuit authority, which permits the arbitrator to interpret and construe ambiguous contract language. *Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge # 82*, 594 F.2d 575 (6th Cir. 1979) (*Detroit Coil Co.*) (citations omitted). Finally, the Court does not address Defendant's claim that the Arbitrator may modify the language of the contract, because even under the latter theory discussed in this footnote, the Arbitrator's decision to impose the less severe of the two penalties would not have modified the contract in any manner.

*Id.* at 596, 80 S.Ct. at 1360. This principle of judicial restraint has been consistently followed by the Courts, *Storer Broadcasting Co. v. American Federation of Television and Radio Artists, Cleveland Local, AFL–CIO*, 600 F.2d 45, 47 (6th Cir. 1979) (*Storer Broadcasting*), with two exceptions. In *Storer Broadcasting*, the Court articulated the two exceptions as follows:

First, "the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co. v. Int'l Ass'n of Machinists*, 594 F.2d 575, 579 (6th Cir. 1979), *citing* cases. Thus, the courts are empowered to set aside an award if the arbitrator exceeds these confines. Second, "although a court is precluded from overturning an award for errors in the determination of factual issues, '[n]evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated.'"

600 F.2d at 47, quoting *Detroit Coil Co.*, 594 F.2d at 580–581. Thus, this Court must determine whether the Arbitrator's decision, ordering reinstatement and awarding back pay, constituted a modification or disregard of the plain language of the contract, and must additionally consider whether there is any support in the record for the arbitrator's award.

### III. *The Arbitration Award*

Sugar Creek and the Union agreed to allow the Arbitrator to determine the wording of the issue submitted to him, but both parties have agreed that the issue outlined by the Arbitrator was, in fact, the point of contention between Sugar Creek and the Union. (Doc. # 11, pp. 3, 4; Doc. # 6, pp. 2–7). The Arbitrator determined the issue to be as follows:

Was the discharge of the individuals named above in the joint exhibit 2(a) through 2(k) for proper cause within the terms of the labor agreement between the parties (jt. 1, Article III, sec. A)?

(Exhibit B attached to Plaintiff's Complaint, p. 1) (hereinafter Exhibit B). The Arbitrator found that the discharge of the eleven employees was not for proper cause, and specifically premised his decision on the following factors:

1. The company supervisor did not make clear to the employees involved the consequences of their going home either sick or with an unexcused absence on February 5, 1980.

2. The company supervisors complicated the actions of February 5 by even implying that if an employee went home, an unexcused absence might be assessed. The employees could have taken this to mean that the worst thing that might happen would be a two point penalty under the absence control program.

3. The grievants cast doubt on the validity of their claims of sickness by leaving the plant within three or four minutes of each other. Further doubts as to the truthfulness of the sickness stories grew out of their refusal to admit seeing each other upon leaving the plant.

4. The company complicated the "wildcat strike" theory of the events of February 5 by clearly encouraging the grievants to present their accounts of illness through doctor's statements.

5. The union and the grievants prevented the company from investigating the problem of alleged illnesses through the refusal to sign medical information release forms. The forms would have permitted the company to interview physicians to determine the truth of the alleged physical complaints.

6. The arbitrator notes that the visits to the physicians probably cost the grievants some money, one exhibit notes a fee of $19.00 (jt. 4i). Some of the grievants went to their physicians from work on February 5th. One or more of them were not at home to get the call from the plant manager that she was fired for engaging in a wildcat strike; she was at the doctor's office. Many of the grievants may have talked themselves into an illness but

at least they were consistent in following through on their feelings. (Exhibit B, pp. 7–8).

Article III, Section A of the Contract, does not define proper cause for discharge. Section A does give the management of the plant the right to establish rules and regulations, a violation of which shall be among the causes for discharge (Exhibit A attached to Plaintiff's Complaint, pp. 1, 2) (hereinafter Exhibit A). Sugar Creek has promulgated such rules, which are expressly incorporated into the contract by Article IX, Section D of that agreement. (Exhibit A, p. 7). Plaintiff has contended that because the Arbitrator found that the employees left work without permission, his decision to order reinstatement constituted an impermissible modification of the unambiguous terms of the contract.

■ First, the Court notes that an examination of the Arbitrator's decision does not indicate that he found the employees guilty of leaving the plant without permission. While the Arbitrator did deduct thirty days pay from the back pay award, that action appears to have been premised upon the Arbitrator's belief that the grievants may not have really been ill, and his feeling that the Union and the employees acted to hinder the resolution of the grievances by refusing to disclose medical information to the company. (Exhibit B, p. 7, ¶ 6; ¶ 8). The Arbitrator specifically noted, just prior to imposing the back pay penalty, that "[t]he decision of the arbitrator is an attempt to cut through an emotional, troubling situation with a solution which balances the *improper or inconsistent actions* of the company officials, *the grievants, and the union officers.*" (Exhibit B, p. 8) (emphasis added). Insofar as this failure to cooperate violated Article II, Section B of the collective bargaining agreement, which requires mutual cooperation by Sugar Creek and the Union (Exhibit A, p. 1), the deduction of the pay was taken from, and shows fidelity to, the essence of the agreement. Contrary to Plaintiff's contentions, the deduction of back pay does not constitute a finding by the Arbitrator that the

employees either left work without permission, or participated in a wildcat strike, but rather was an attempt to foster future cooperation, as is mandated by the bargaining agreement.

In fact, the Arbitrator's decision indicates a finding that, rather than leaving work without permission, the employees were at most guilty of having an unexcused absence. On pages five and six of his opinion, the Arbitrator spent considerable time discussing the events preceding the employees' departure. The Arbitrator noted that many of the women became upset over what they perceived to be more severe cold in the Slicing Department than usual. (Exhibit B, p. 5). The Arbitrator further found that:

> Supervisor Shutte told the employees that it was not too cold. He then added that if anyone was sick she would have to go to see a doctor and bring back a note. In several instances, he said that if anybody left because it was too cold, it would be an unexcused absence (Tr. 32). Nothing was said about going back to work; no order was issued to individuals or to the group that any failure to work would lead to discipline or even discharge; the supervisor and the grievants all tell much of the same story.

(Exhibit B, pp. 5, 6). These conclusions of the Arbitrator are amply supported by the testimony at the Arbitration hearing (testimony of Shutte, Slicing Supervisor, T–25, 27, 30, 31, 32, 33, 67, 68; testimony of grievants, T–138, 139, 182, 183, 200, 201, 216, 227, 232, 252, 268, 279, 306, 307).

In addition to the above findings, the Arbitrator stated that:

> In any case, the supervisor did not try to reason with the employees nor did he issue direct orders which could not be misunderstood. He equivocated. He said it is not too cold, if you leave, it is an unexcused absence. If you are sick, bring a doctor's excuse. His statements were subject to the interpretations that were placed on them by the group of eleven grievants.

(Exhibit B, p. 6). The interpretation placed upon Shutte's statements, as indicated by the testimony of the grievants, was that leaving would be permissible, if the employee was ill and brought in a doctor's excuse; leaving because of the cold would result in an unexcused absence, which based on the employees' experience, could result in a penalty of two points, or possibly no penalty at all. (Arbitration Hearing, T–138, 139, 143, 145, 146, 161, 182, 183, 189, 200, 201, 215, 216, 227, 232, 236, 237, 251, 252, 268–270, 279–281, 305–309).

■ Because the Arbitrator apparently concluded that the employees were guilty of an unexcused absence, which under the Sugar Creek Rules of Conduct merely warrants a point penalty rather than discharge (Exhibit A, p. 14), his decision that the fired employees should be reinstated is entirely consistent with the terms of the collective bargaining agreement, and is supported by the evidence in the record.

■ Plaintiff has contended that the employees left without permission, were properly discharged pursuant to the Rules of Conduct, and that the Arbitrator's failure to apply the unambiguous contractual provision for discharge in such situations constituted an attempt to administer the Arbitrator's own brand of industrial justice. These arguments are answered by the Court's determination that the violation found by the Arbitrator was an unexcused absence rather than leaving without permission. However, assuming *arguendo* that the employees' offense was that of leaving without permission, the contractual terms relating to that violation are not unambiguous. The Rules of Conduct established by Sugar Creek provide, *inter alia*, that:

> The following offenses are of a serious enough nature, either to the company or to another employee, to warrant immediate discharge.

. . . . .

> 9. Leaving the plant without permission during your shift.

(Exhibit A, p. 14). However, the Rules also provide an alternative to discharge, by creating an offense point system, which provides, as is pertinent herein, that:

> Points will be given for the following offenses. The number of points given for each offense will be shown following the offense.

. . . . .

> 13. Failure to obtain supervisor's permission to leave job or department. (3 Points).

(Exhibit A, pp. 14, 15). While this provision could be read as referring only to in-plant activity, rather than leaving the plant itself, the terms of the provision do not clearly limit it in such a manner. Therefore, the contract could be read as permitting a penalty of either discharge or points when an employee has left the job without permission. Given this contractual ambiguity, the Arbitrator was entitled to conclude that imposition of a discharge penalty was improper, particularly under the circumstances herein, which indicate that the employees were informed only that their departures would be treated as unexcused absences. (Arbitration Hearing, T–33, 68).

Plaintiff has cited the case of *Amanda Bent Bolt Co. v. Int'l Union, United Automobile, Aerospace, Agricultural Implement Workers of America, Local 1549*, 451 F.2d 1277 (6th Cir. 1971) (*Amanda Bent*), as particularly relevant to this action. In *Amanda Bent*, the arbitrator specifically found that the employees had engaged in an unauthorized work stoppage, which constituted grounds for discharge under the contract. *Id.* at 1279. Unlike *Amanda Bent*, however, the Arbitrator herein did not find that the fired employees had engaged in conduct meriting dismissal under the contract. The Arbitrator's decision does not contain any findings, explicit or implicit, that the employees left work without permission, or engaged in a wildcat strike. Although both theories were presented to the Arbitrator, he concluded that the Supervisor did not make the consequences of leaving clear to the employees, but instead had implied that a departure from work would be treated as an unexcused absence. (Exhibit B, p. 7). There-

fore, the Court does not find that *Amanda Bent* requires that the Arbitrator's decision must be overturned. Moreover, assuming *arguendo* that the employees herein left without permission, the Arbitrator's decision to apply an alternative penalty was based, unlike the arbitral decision in *Amanda Bent*, 451 F.2d at 1280, upon the terms contained in the collective bargaining agreement. *See*: Footnote 1, *supra*.

The preceding analysis has indicated that under the standards of review established by the Sixth Circuit and the United States Supreme Court, the Arbitration Award herein is both supported by the evidence of record, and is in compliance with the terms of the bargaining contract, whether one assumes that the employees' violations constituted either unexcused absences, or leaving their jobs without permission. Therefore, Defendant is entitled to judgment as a matter of law.

 As a final matter, the Court notes that Defendant has requested attorney fees. The Sixth Circuit has indicated that awarding of attorney fees is a matter within the discretion of the Court. *Nashville Newspaper Printing Pressman's Union Local v. Newspaper Printing Corp.*, 518 F.2d 351, 352 (6th Cir. 1975). Having found no evidence herein of an unjustified, bad faith or frivolous refusal by Plaintiff to abide by the Arbitration Award, *Local No. 149 Int'l Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. American Brake Shoe Co.*, 298 F.2d 212, 217 (4th Cir. 1962), cert. denied 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962), the Court declines to allow attorney fees to the Union.

IV. *Conclusion*

Based on the foregoing discussion, the Court finds that:

1. The Plaintiff's Motion for Summary Judgment is not well taken, and is accordingly denied;

2. The Defendant's Motion for Summary Judgment is granted, with the exception that Defendant's request for attorney fees is denied.

3. Final judgment is, therefore, entered in favor of the Defendant and against the Plaintiff herein, thus affirming the arbitration award at issue.

4. Costs are to be paid by the Plaintiff.

5. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.