**TEAMSTERS LOCAL 957, Plaintiff,**

v.

**R.W.F. DISTRIBUTING COMPANY, Defendant.**

**No. C-3-79-161.**

United States District Court, S.D. Ohio, W.D.

March 17, 1983.

Bruce E. Pence, Dayton, Ohio, for plaintiff.

Daniel G. Rosenthal, Cincinnati, Ohio, for defendant.

DECISION AND ENTRY ON PENDING MOTIONS; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; JUDGMENT TO BE ENTERED FOR DEFENDANT; ARBITRATION AWARD VACATED IN PART, CASE REMANDED IN PART; TERMINATION ENTRY

RICE, District Judge.

This matter presents Plaintiff's effort to vacate an arbitrator's decision and award in favor of the Defendant Company. The case is presently pending before the Court upon cross motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment is overruled, and Defendant's motion for summary judgment is sustained.

## I.

Plaintiff and Defendant were parties to a collective bargaining agreement ("Agreement"), effective from June 1, 1978, through June 1, 1981. Article XI of the Agreement provides that all grievances arising out of the Agreement are to be resolved through "final and binding" arbitration. In June of 1978, one Mickey Paul, employed by Defendant as a truck driver, filed a grievance protesting the Company's reduction of his sales route. His grievance was processed through arbitration, and a hearing was held before an arbitrator on August 4, 1978. On January 5, 1979, the arbitrator denied the grievance in a written decision.

Plaintiff filed suit in this Court, under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Union asked this Court to vacate the award, and remand for a new arbitration, since the arbitrator, it alleged, failed to consider relevant evidence, falsely characterized the testimony of Billy Collins (who represented the Union at the hearing), and "imperfectly executed his powers" under the Agreement. Complaint, ¶¶ 9–10. The Company answered and counterclaimed (Doc. # 3), contending that the arbitration improperly failed to direct the union to pay the costs of the arbitration.

## II.

The parties appear to agree that there exist no genuine issues of material fact, *but cf.* footnote 1, *infra,* and that the matter is properly before the Court upon cross motions for summary judgment by the Defendant (Doc. # 9) and Plaintiff (Doc. # 16), pursuant to Fed.R.Civ.P. 56.

■■■ The parties also agree, in the main, on the appropriate standard by which a court reviews an arbitration award. It is settled that Courts may not review the *merits* of an arbitration. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The standard of review is quite narrow:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award.

*Grand Rapids Die Casting Corp. v. UAW Local Union No. 159,* 684 F.2d 413, 416 (6th Cir.1982) (quoting *Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. at 1361). Put another way, there are generally two exceptions to the principle of judicial restraint in reviewing arbitration awards, as this Court recently stated:

First, "the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co. v. Int'l Ass'n of Machinists,* 594 F.2d 575, 579 (6th Cir.1979), *citing* cases. Thus, the courts are empowered to set aside an award if the arbitrator exceeds these confines. Second, "although a court is precluded from overturning an award for errors in the determination of factual issues, '[n]evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determination, his award must be vacated.'"

*Sugar Creek Packing, Inc. v. Amalgamated Food and Allied Workers District Union 430,* 526 F.Supp. 809, 812 (S.D.Ohio 1981) (quoting *Storer Broadcasting Co. v. American Federation of Television and Radio Artists,* 600 F.2d 45, 47 (6th Cir. 1979)).

Based on these standards, this Court does not find it proper (with one minor exception set out below) to vacate the arbitration award. Plaintiff advances two principal reasons in support of its motion to vacate the award. First, it contends that

the arbitrator's written decision indicates that he simply did not consider certain relevant information found in Joint Exhibit (J.E.) 3, submitted to the arbitrator after the hearing. Second, it argues that, in the decision, the arbitrator mischaracterized the testimony of Billy Collins.

Defendant makes little effort to contest these contentions. Indeed, they appear to be completely true. In his written decision, a copy of which is attached to the complaint, the arbitrator addressed Plaintiff's argument that the number of cases of beer and wine sold by Paul fell drastically after his route was changed. The arbitrator listed information from J.E. 3, covering deliveries from April through August of 1978. He concluded that "[i]t would therefore appear that there was no appreciable change in the number of cases sold prior to the June 8th date and after." Award at 7. His listing, however, omits the last two weeks of May and all of June. The figures from those weeks, which *are* found in J.E. 3 filed with the Court (Doc. # 16, Ex. A), would undoubtedly cause the arbitrator to modify his above stated conclusion.

Similarly, the arbitrator summarized the testimony of Billy Collins, stating that Collins testified, *inter alia,* that he was aware of at least one other company which permitted a cut of up to 1400 cases a week in a driver's route. Award at 7. In his deposition, filed with the Court (Doc. # 16, Ex. B), Collins stated that, in fact, he testified that this other company would not cut a route *below* 1400 cases a week. Deposition of Billy R. Collins at 10–11.[1]

Even conceding these apparent mistakes by the arbitrator, however, Defendant correctly points out that these erroneous factual findings were not "determinative of

the arbitrator's decision." Doc. # 9, p. 4. The arbitrator stated the "issue" to be: "Did the Company violate the collective bargaining agreement between the parties by cutting the route of the grievant, Mickey Paul, and if so, what shall be the remedy?" Award at 6. After discussing, as noted above, the information in J.E. 3, and Collins' testimony, the arbitrator stated that:

> The Arbitrator has carefully read the contract in effect between the parties, and although the Driver-salesmen are guaranteed a five-day work week and a basic weekly wage and a schedule exists as to the commission to be paid on cases and barrels (full and empty), no guarantee exists as to commission in the contract.
>
> Furthermore, no provision exists in the contract that restricts management in establishing or changing routes.
>
> The Arbitrator cannot find a violation of the seniority provision of the Contract. It is clear that the grievant bid on the New Carlisle-Medway route, but was not awarded that particular route because a fellow employee with more seniority was awarded the route. There is no provision in the seniority article that route cuts or route changes must be accomplished with the seniority of Driver-salesmen in mind.

Award at 7. The arbitrator also held that there was no evidence that the Company had violated the Agreement's provision prohibiting discrimination against an employee "for his activity as a Union member." Award at 8.

 Ordinarily, as noted above, a court will not vacate an award for errors in de-

---

1. This paragraph assumes that Collins accurately replicated, in his deposition, his testimony at the hearing. Neither party states that a transcript was made of the hearing. Apparently, such hearings are infrequently transcribed, and the Agreement herein does not mandate same. It should also be noted that Defendant does not entirely accept Plaintiff's argument on this point. The Company relies on an affidavit sworn to by Robert C. Anton, an attorney who attended the hearing, who states that "To the best of my recollection, the arbitrator did not misstate or mischaracterize witness Collins' testimony." Affidavit, ¶ 5, attached to Doc. # 20. (The affidavit was filed one day late, and Defendants ask the Court to consider same timely filed. Doc. # 20, at 2 n.*. Said request is granted.) This obviously presents disputed facts, but as explained in the text, *infra,* these disputed facts are simply not *material* for purposes of Rule 56.

termination of factual issues, unless there is "no support whatever" in the record for such determinations. While the arbitrator herein apparently did make factual errors, it is not entirely clear that his determinations have "no support whatever" in the record before him. This alone could end the Court's inquiry. More importantly, however, these factual determinations simply did not serve as a predicate for the Arbitrator's ultimate conclusion that the Company's actions were not forbidden by the terms of the Agreement. His factual determinations appear to be background information or, perhaps, an alternative ground for the decision. In either case, the errors in same do not detract from the conclusion that the arbitrator based his ultimate decision on the terms—the "essence"—of the Agreement. Plaintiff has not argued that the arbitrator misinterpreted any provision of the agreement; as previously noted, Plaintiff only contested the basis of the arbitrator's factual determinations. A review of the Agreement by this Court indicates that the arbitrator accurately characterized the provisions of the agreement.[2]

For these reasons, the Court does not find it proper to vacate those portions of the award denying the grievant's claim. However, *Defendant* has challenged one narrow portion of the arbitrator's decision. The Agreement states that the "loser of the arbitration *shall* pay the cost of the arbitration." (emphasis added). Near the end of his opinion, the arbitrator was somewhat critical of the grievant *and* company officials, and concluded as follows:

> So, the Arbitrator must rule that the grievance of Mickey Paul must be denied, and, therefore, he, and the Union, are the "losers," but, so also is the Company because of the action of the Employer Fisher in his conduct during the period of the negotiations, post-negotia-

tions, and the period following the route cuts.

> Therefore, I am also ruling that the Company, too, "lost" in their handling of the entire situation, and, therefore, the costs of this arbitration shall be borne equally by both the Company and the Union.

Award at 8. Defendant argues that this ruling ignores the plain language and mandate of the Agreement—that the "loser," the Union, "shall" pay *all* the arbitration costs. Plaintiff argues that the arbitrator was merely exercising his discretion in structuring a remedy, a decision this Court should not overturn.

■ As when he interprets other portions of the Agreement, the arbitrator, when fashioning the remedy, must draw from the "essence" of the Agreement. *Buckeye Cellulose Corp. v. UAW District 65,* 689 F.2d 629, 631 (6th Cir.1982) (per curiam); *General Telephone Co. v. Communication Workers,* 648 F.2d 452, 456–57 (6th Cir.1981). Here, the arbitrator, while making a laudable effort to strike some sort of compromise on the issue of costs, simply ignored the plain language of the Agreement. Said Agreement clearly contemplates *one* side *or* the other "losing," and the use of the word "shall" eliminates any discretion on the arbitrator's part. Nor did the arbitrator refer to the "law of the shop" or other factors, *cf.* footnote 2, *supra,* which might support the exercise of discretion. In short, the arbitrator's remedy did not draw on the "essence" of the Agreement. This conclusion is underscored by the Agreement itself, which states:

> It is mutually agreed that the arbitrator shall only have power to rule on questions as they apply to the interpretations of this contract and shall not have authority to change, alter or nullify any of the provisions of this Agreement.

---

**2.** It might be argued that the arbitrator was construing the Agreement, as he could have, not merely in the written contract, but also in the "common law of the shop," including the unwritten customs and the practices of the industry and of a particular business. *United Steelworkers of America v. Warrier & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1358,

1352, 4 L.Ed.2d 1424 (1960). If this was true, the arbitrator's alleged factual errors could take on greater meaning. Suffice it to say, however, that Plaintiff does not explicitly make this argument, and an examination of the award indicates that the arbitrator relied only on the language of the Agreement, in interpreting same.

Accordingly, while there may be some element of unfairness here, with Defendant having its cake and eating it, too, the Court is compelled to vacate that portion of the arbitrator's award relating to costs.[3]

### III.

For all of these reasons, the Court declines to vacate the arbitration award, with the one narrow exception noted above. Plaintiff's motion for summary judgment is overruled, and Defendant's motion for summary judgment is sustained. Judgment is to be entered for Defendant.

The arbitration award is vacated, and the case remanded, only to the extent necessary for the Union to pay the full costs of arbitration to the Company.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**3.** To the extent that these costs may cover attorney's fees, the Court's ruling does not contravene the rule that such fees cannot be awarded in arbitration review cases. *See, Buckeye Cellulose, supra,* 689 F.2d at 631 (relying on *Summit Valley Industries v. Carpenters & Joiners Local 112,* 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982)). Instead, the fees awarded to Defendant herein are mandated by the Agreement, and are an inherent part of the award. *Eazer Express, Inc. v. International Brotherhood of Teamsters,* 520 F.2d 951, 972.(3rd Cir.1975).