**LODGE 2167, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

**v.**

**LeROI DIVISION, DRESSER INDUSTRIES, INC., Defendant.**

No. C–3–82–492.

United States District Court, S.D. Ohio, W.D.

Oct. 12, 1983.

Bruce E. Pence, Dayton, Ohio, for plaintiff.

Stuart M. Gordon, Columbus, Ohio, for defendant.

DECISION AND ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT; PLAINTIFF'S MOTION OVERRULED; DEFENDANT'S MOTION SUSTAINED; JUDGMENT TO BE ENTERED FOR DEFENDANT; TERMINATION ENTRY

RICE, District Judge.

In this case, Plaintiff seeks to vacate, in part, an arbitration award handed down on June 8, 1982. That award, made pursuant to the grievance and arbitration provisions of a collective bargaining agreement (CBA) between the parties, held that LeRoi Division had no "just cause" to discharge one Mary Voskuhl, a union member and (former) employee of Defendant. The arbitrator also held, however, that Ms. Voskuhl was not entitled to reinstatement. Plaintiff seeks to vacate the latter portion of the award. The matter is before the Court upon cross motions for summary judgment.

I.

The record reveals the following material facts, which the parties agree are not in dispute. Under Art. IV, § 16, of the CBA, employees may only be discharged "for just cause." The agreement further provides that "seniority shall be broken by," among other things, "discharge for just cause" (Art. XIV, § 100(b)), or "absence from work for three (3) consecutive days without notifying the Industrial Relations Department of a reasonable and acceptable excuse for such absence ...." (Art. XIV, § 100(c)). The agreement also establishes, under Arts. VI & VII, a grievance procedure culminating in "final and binding" arbitration. Arbitration is meant to cover "[a]ll grievances and all disputes between the parties as to the interpretation or application of" the CBA. Art. VII, § 44.

Defendant discharged Ms. Voskuhl on April 21, 1981, following her plea of guilty to an involuntary manslaughter charge. Plaintiff grievanced the matter, and the dispute eventually went to an arbitrator, who held a hearing on April 13, 1982. The parties could not and did not stipulate to the issues to be decided by the arbitrator, but the company, in its pre- and post-hearing memoranda, stated that the issues were: (1) whether the discharge was in accordance with the CBA, and (2) if not, what was the proper remedy? Similarly, the union, in its post-hearing brief, stated that the issues were: (1) whether the discharge was for just cause and (2) if not,

382

what was the proper remedy? On the second page of his opinion and award, the arbitrator listed the issues in the same wording as did the union. In the award, the arbitrator held that the discharge was *not* for just cause, since the company did not and could not demonstrate that Ms. Voskuhl's guilty plea would adversely affect the company. He went on to hold, however, that she could not be reinstated since she was incarcerated after the guilty plea, and "would have been unable to report to work and her discharge would have been properly effected under" § 100(c) of the CBA. Award at 17. He added that she may be entitled to certain back pay, and directed the parties to further consult on that issue. *Id.*

Plaintiff filed suit in this Court on August 30, 1982, as an action to modify an opinion and award of arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 10–11, Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and Ohio Rev.Code Ann. § 2711.11 (Page 1982). In Count I of the Complaint, Plaintiff alleged that the arbitrator exceeded his powers by deciding an issue (that being an application of § 100(c) of the CBA) not submitted to him for decision. In Count II, Plaintiff also alleged that the arbitrator exceeded his powers, since he reached the remedial issue even though the company failed to establish just cause, and because he misinterpreted § 100 of the CBA.

Defendant has filed a motion to dismiss the complaint and to confirm the arbitration award (Doc. # 6), and Plaintiff has moved to modify or vacate the award (Doc. # 8). While not so denominated, the Court finds it proper to treat these papers as cross-motions for summary judgment under Fed.R.Civ.P. 12(b)(6) & 56, given that both parties have referred to verified materials outside the pleadings, and that no material facts are in dispute.

## II.

■ The law applicable to this case is not seriously disputed by the parties. It is well settled that a federal court's review of an arbitration decision, derived from the provisions of a CBA, is quite narrow. Courts may not review the *merits* of an arbitration, and can only determine if the arbitral award drew "its essence from" the CBA. *W.R. Grace & Co. v. Rubber Workers Local 759,* —— U.S. ——, ——, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (*quoting, Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)); *Grand Rapids Die Casting Corp. v. UAW Local Union No. 159,* 684 F.2d 413, 416 (6th Cir. 1982). Put another way, there are generally two exceptions to the principle of judicial restraint in reviewing arbitration awards, as this Court has stated:

> First, "the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co. v. Int'l Ass'n of Machinists,* 594 F.2d 575, 579 (6th Cir.1979), *citing* cases. Thus, the courts are empowered to set aside an award if the arbitrator exceeds these confines. Second, "although a court is precluded from overturning an award for errors in the determination of factual issues, '[n]evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determination, his award must be vacated.'"

*Sugar Creek Packing, Inc. v. Amalgamated Food and Allied Workers District Union 430,* 526 F.Supp. 809, 812 (S.D.Ohio 1981) (*quoting, Storer Broadcasting Co. v. American Federation of Television and Radio Artists,* 600 F.2d 45, 47 (6th Cir. 1979)).

■ As outlined above, Plaintiff advances two principal arguments in support of its complaint: (1) the issue of interpreting § 100(c) of the CBA was not submitted to the arbitrator and should not have been decided by him, and (2) even if that issue was properly reached, he misinterpreted § 100(b) and (c) in making the decision.

For the following reasons, the Court does not find either rationale to be compelling.

With regard to the first rationale, it is settled that parties "cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). In determining the scope of an arbitration submission, Courts consider, *inter alia*, correspondence between the parties and arguments during arbitration to be relevant. *Kroger Co. v. Teamsters Local No. 661*, 380 F.2d 728, 731–32 (6th Cir.1967); *Oil, Chemical & Atomic Workers Local No. 2–477 v. Continental Oil Co.*, 524 F.2d 1048, 1050 (10th Cir.1975), *cert. denied*, 425 U.S. 936, 96 S.Ct. 1668, 4 L.Ed.2d 177 (1976). *See also, Lackawanna Leather Co. v. Food & Commercial Workers Local No. 271*, 706 F.2d 228, 231–32 (8th Cir.1983) (en banc); *id.* at 234 & n. 2 (Gibson, C.J., concurring and dissenting); *Chemineer, Inc. v. Machinists & Aerospace Workers Local Lodge 225*, 573 F.Supp. 1, at 2, (S.D.Ohio 1983).

■ Herein, Plaintiff insists that the "entire record in the instant case indicates that the parties" only "submitted the [just cause] issue for resolution" by the arbitrator. Plaintiff's Memorandum, Doc. # 8, p. 5. In support of this assertion, Plaintiff correctly observes that the original grievance only referred to the discharge, and the post-hearing briefs (and evidence submitted at the hearing) focused almost entirely on the just cause issue. The Plaintiff-Union also argues that it would have presented more or different evidence at the hearing had it known that § 100(c) would be addressed by the arbitrator.

However, as Defendant points out, the parties submitted the issues of proper discharge *and* of the "remedy" to the arbitrator. Having acquiesced in a broadly worded submission to the arbitrator (i.e., whether the discharge was for just cause and, if not, what was the proper remedy), Plaintiff-Union is hard-pressed to *now* complain that the opinion and award was too broad.

*Kroger Co., supra*, 380 F.2d at 731. More importantly, Defendant *did* present the applicability of § 100(c) of the CBA as one of several issues before the arbitrator. That specific section was cited in the company's (written) opening statement at the hearing (at pp. 5–8) and same was raised by the *union* at the third step of the grievance procedure. Thus, the applicability of § 100(c)—in addition to § 100(b)—was arguably included in the broadly worded submission of issues and, in any event, was expressly advanced in the record and before the arbitrator. Plaintiff had (and apparently missed) a chance to more fully develop the record before the arbitrator on § 100(c).

A recent Sixth Circuit decision relied upon by Plaintiff, *Buckeye Cellulose Corp. v. UAW District 65*, 689 F.2d 629 (6th Cir.1982) (per curiam), does not change this result. That case, like the instant one, involved a CBA which permitted the employer to only discharge employees for just cause. *Id.* at 630 n. 1. The company therein discharged an employee, and the matter eventually went to arbitration, where the union and company jointly stipulated the issues, those being: did the discharge violate certain provisions of the CBA and, if so, what should the remedy be. *Id.* at 630. The arbitrator answered the first question in the negative, but went on to hold that the remedy was too severe. On appeal, the Sixth Circuit held that the arbitrator exceeded his authority by reaching the remedy question, since that was only contingent on answering the first inquiry in the affirmative. *Id.* at 631 & n. 2. As even Plaintiff admits, *Buckeye Cellulose* presents obvious factual differences from the instant case. The submission of issues in both cases (even though not stipulated in the within matter) was similar, but the *Buckeye Cellulose* arbitrator, unlike the one here, found just cause for the discharge, and had no authority to rule further. Once this Court decides, as it has, that the applicability of § 100(c) *was* submitted to the arbitrator (under the question of the proper remedy if the discharge was

not for just cause), *Buckeye Cellulose* simply does not aid Plaintiff in any way. *See generally, Chemineer, Inc., supra,* at 2–4 (discussing *Buckeye Cellulose* and related cases).

 Plaintiff's second objection to the arbitrator's decision—that he failed to draw the essence of his opinion and award from the CBA—also is not well taken. In applying § 100(c) of the CBA, Plaintiff contends, the arbitrator relied on "a number of invalid assumptions," Plaintiff's Memorandum, Doc. # 8, p. 10. According to Plaintiff, the arbitrator incorrectly assumed that Ms. Voskuhl could not exercise her recall rights despite incarceration, and that incarceration automatically constitutes an unreasonable and unacceptable absence from work. *Id.,* pp. 11–12. In contrast, Defendant argues that the union should have raised these issues at the arbitration hearing and that, in any event, the arbitrator's construction of § 100 was correct. Defendant's Memorandum, Doc. # 9, pp. 7–8.

The Court agrees with Defendant. There is some ambiguity in the language of § 100, and both parties have arguably advanced equally plausible versions of that language. The fact remains, however, that the arbitrator chose one of the alternatives, and his construction of ambiguous contract language, as this Court noted in *Sugar Creek Packing Co., supra,* is entitled to deference. *Accord, Teamsters Local No. 337 v. Armour & Co.,* 700 F.2d 327, 329 (6th Cir.1983) (per curiam). Nor is the arbitrator's construction of § 100 devoid of factual or legal support in the record, since he basically adopted the arguments advanced by the company in the aforementioned opening statement. In short, the Court finds that the arbitrator, in fashioning a remedy, drew from the essence of the CBA, as he was required to do. *Buckeye Cellulose Corp., supra,* 689 F.2d at 631; *Teamsters Local 957 v. R.W.F. Distributing Co.,* 574 F.Supp. 703 at 707 (S.D.Ohio 1983).

While the Court agrees with the Defendant's arguments, the Court emphasizes that the issues presented are somewhat close. Most, if not all, of Plaintiff's arguments stem from its contention that the issue of § 100(c) was never submitted to the arbitrator. As indicated, the Court cannot agree with said argument. Thus, the Court cannot vacate any part of the arbitration award.

### III.

For the aforementioned reasons, the Court overrules the Plaintiff's motion to vacate or modify the arbitration award and sustains the Defendant's motion to confirm same. Plaintiff's motion for summary judgment is overruled, and Defendant's motion for summary judgment is sustained.

Judgment is to be entered for the Defendant.

No further proceedings appearing to be necessary, the Court orders that this case be terminated upon its docket records. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.