**EXQUISITO SERVICES, INC., Plaintiff,**

**v.**

**BARTENDERS, MOTEL, HOTEL AND RESTAURANT WORKERS LOCAL UNION NO. 222, Defendant.**

**No. C–3–83–742.**

United States District Court,
S.D. Ohio, W.D.

Feb. 1, 1984.

---

1. Although plaintiff alleges that defendants continue to discriminate against the class of similarly situated persons that he seeks to represent, plaintiff is precluded from being a member of such a class because his action is time-barred. *See, e.g., Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239 (3rd Cir.1975), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Thus, plaintiff cannot represent said class. Rules 17(a) and 23(a), Fed.R.Civ.P.; 7 Wright & Miller, *Federal Practice and Procedure* § 1761.

Robert E. Portune, Dayton, Ohio, for plaintiff.

Bruce E. Pence, Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DEFENDANT'S REQUEST FOR ATTORNEY'S FEES OVERRULED; PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD OVERRULED; TERMINATION ENTRY

RICE, District Judge.

Plaintiff Exquisito Services, Inc., brought suit to vacate an arbitration award rendered in favor of an employee represented by Defendant Bartenders, Motel, Hotel and Restaurant Workers Union No. 222 (Union). Defendant has moved for summary judgment, contending that this Court should not disturb the arbitrator's decision, and for an award of attorney's fees. For the following reasons, the Court sustains the Defendant's motion for summary judgment but declines to grant attorney's fees.

## I. *Background*

The parties do not dispute the relevant facts although, as will be noted below, Plaintiff suggests that greater factual development of the record is in order. Plaintiff provides cafeteria services to Wilberforce University in Wilberforce, Ohio, and is a party to a collective bargaining agreement (CBA) with the Union, covering nonsupervisory cafeteria employees. On November 24, 1982, one Shirley Day, a cafeteria employee (and union steward) engaged in a verbal confrontation with a supervisor, refused to work, and walked off the job, apparently followed by virtually all other employees. By a letter dated December 10, 1982, Plaintiff notified Ms. Day of her termination for "gross insubordination," and for causing a "work stoppage," in violation of Arts. VI and IV, § 1, respectively, of the CBA.

The CBA in question contains a grievance procedure culminating in "final and binding" arbitration. Art. V, § 4. The provisions which the Company accused Ms. Day of violating are as follows:

ARTICLE IV—NO STRIKE—NOT LOCK OUT—Section 1. During the life of this Agreement, the Union shall not cause, authorize, participate, nor condone any strike, slowdown, sitdown, work stoppage, nor any other employees meeting during working hours, or other concerted interruption or interference with the business of company, including picketing of the Company's premises; nor will the Company lock out item employees in connection with any labor dispute. Section 2. Any violation of this Article by an employee or employees shall constitute cause for discharge of the employee or employees who participate therein provided the Company has not locked out its employees.

. . . . . .

Section 4. Any violation of Section 1 above by any employee shall constitute just cause for disciplinary penalty as the Company may determine, subject to the grievance and arbitration procedure of this Agreement. However, if an arbitrator finds that any employee has violated Section 1 herein, he shall have no power to modify the disciplinary action taken by the Company with respect to such employee.

ARTICLE VI—EMPLOYEE DISCIPLINE—It is understood and agreed that the Company shall have the right to make and enforce work rules which are not in conflict with this Agreement, for the purpose of governing the conduct of its employees. Serious violations of the Company rules, such as dishonesty, fighting on Company or Client property, use of intoxicating beverages or drugs, gross insubordination, etc., shall be grounds for immediate discharge. It is also understood that the Company and the Union subscribe to the principle of progressive discipline. When an employee is found to be in violation of Company rules, of a less nature than is outlined above, he shall be given a written warning for the first such violation. In the event that an employee's conduct should continue to be unacceptable, he may be given a disciplinary layoff as a result of such unacceptable conduct or violation of the Company rules. All write-ups and warnings are to be brought to the attention of the Union Steward. Copies of all written warnings or disciplinary actions shall be given to the employees, the Union Steward, the Union, and a copy will be placed in the employee's personnel file.

As per the CBA, the Union grieved the discharge. The matter went to arbitration, and after a hearing, an arbitrator on June 22, 1983, sustained the grievance and ordered Ms. Day reinstated with full back pay. More specifically, the arbitrator first related the facts as he found them. In brief, he found that a supervisor requested Ms. Day, after she returned from a Union meeting, to clean a certain oven, to which she refused. They then exchanged some words. The arbitrator then found:

At that time, the Union officials who were in the process of departing were called by the other employees and came

to the Grievant's work area and observed her throw a cold cup to the floor and express that she was tired of the "damned" place. The other employees that had witnessed this confrontation, escorted the crying Grievant from the area. After the Manager finished cleaning the oven, he went through the cafeteria and observed only two employees in any of the other areas.

Award at 2. The arbitrator then held that the grievance had been filed in a timely manner, *id.* at 6–8, and that while Ms. Day's "refusal to perform the work" made her "a proper subject for discipline," it did not constitute "gross insubordination," and a lesser penalty than discharge was in order. *Id.* at 8–9. Finally, the arbitrator addressed Plaintiff's position that Ms. Day's actions violated Art. IV, § 1, of the CBA by "causing" a strike or work stoppage:

> Such an interpretation of this provision in the Contract is untenable. Almost every act of insubordination will draw the attention of other workers and interfere with their labor and, although this cannot be condoned, it is not tantamount to a work stoppage. Article IV must be read to infer an overt effort to seek or slow work or at least direct encouragement to do so, not mere distraction.

*Id.* at 9–10.

■ Plaintiff thereafter filed suit in the Greene County (Ohio) Court of Common Pleas, seeking to vacate the arbitrator's decision pursuant to Ohio Rev.Code § 2711.10. The Union removed the case to this Court, under 28 U.S.C. § 1441, contending that the action arose under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiff did not oppose removal, and the removal appears to be proper. *See, Franchise Tax Board v. Construction Laborers Vacation Trust,* —— U.S. ——, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983).

## II. *Issues*

According to Plaintiff, the arbitrator decided three issues, only the last of which it challenges in this lawsuit. The arbitrator "correctly" held that the grievance was filed in a timely manner. Plaintiff's Memorandum Contra, Doc. # 5, p. 3. Next, the arbitrator held that Ms. Day was not guilty of "gross insubordination," an incorrect decision according to Plaintiff, but "because the standards for judicial review prohibit challenge to 'factual' determinations of an arbitrator, no challenge is made thereto." *Id.* Finally, Plaintiff *does* challenge the "blatant failure of the arbitrator to apply a clear contractual requirement," *id.,* namely, Art. IV, § 1 of the CBA, covering whether a grievant "caused an interference with the Company's business." *Id.*

■ In addition, Plaintiff contends that this Court should not rule on the motion for summary judgment filed by the Union until a more "complete record" is before the Court, including notes taken by the arbitrator (as a transcript of the arbitration hearing is unavailable). *Id.* at 6. The Court does not agree. The Union argues in its motion that the arbitrator's decision should be upheld, and has provided a copy of the grievance, the CBA, and the arbitrator's decision. As will be outlined below, an arbitrator's *factual* findings *can* be challenged in Court, to the limited extent they have "no support whatever" in the record. Inasmuch as Plaintiff does not challenge the arbitrator's *factual* findings, the Court finds it unnecessary to order further expansion of the record.

■ Most challenges to arbitration decisions under LMRA § 301 are decided on cross-motions for summary judgment on a paper record, *see, Storer Broadcasting Co. v. American Federation of Television and Radio,* 600 F.2d 45, 49 n. 15 (6th Cir.1979), although, as Plaintiff correctly points out, a district court can order further discovery (such as requiring the arbitrator to clarify his award), *id.* at 47–48, or hold a trial to resolve disputed issues of fact. Such procedures are not in order herein, since Plaintiff is only challenging the arbitrator's construction of the CBA, not his factual findings. While in some circumstances review of extrinsic evidence may be appropriate to

discern the intent of the drafters of a CBA, *cf. United States Steel Corp. v. NLRB*, 711 F.2d 772, 779 n. 7 (7th Cir.1983), the additional evidence Plaintiff refers to would have no impact on the meaning of the CBA herein. Pursuant to Fed.R.Civ.P. 56, the Union has properly supported its motion for summary judgment, demonstrated that there are no genuine issues of material fact, and the motion is properly before the Court for decision. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983).

### III. *Review of Arbitrator's Decision*

The parties agree on the law applicable to Court review of an arbitrator's decision. Recently, this Court summarized that law.

> It is well settled that a federal court's review of an arbitration decision, derived from the provisions of a CBA, is quite narrow. Courts may not review the *merits* of an arbitration, and can only determine if the arbitral award drew "its essence from" the CBA. *W.R. Grace & Co. v. Rubber Workers Local 759*, [—— U.S. ——], 103 S.Ct. 2177, 2182 [76 L.Ed.2d 298] (1983) (*quoting, Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 [80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424] (1960)); *Grand Rapids Die Casting Corp. v. UAW Local Union No. 159*, 684 F.2d 413, 416 (6th Cir.1982). Put another way, there are generally two exceptions to the principle of judicial restraint in reviewing arbitration awards, as the Court has stated:
>
> First, "the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil Co. v. Int'l Ass'n of Machinists*, 594 F.2d 575, 579 (6th Cir.1979), *citing* cases. Thus, the courts are empowered to set aside an award if the arbitrator exceeds these confines. Second, "although a court is precluded from overturning an award for errors in the determination of factual issues,

> '[n]evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determination, his award must be vacated.'"
>
> *Sugar Creek Packing, Inc. v. Amalgamated Food and Allied Workers District Union 430*, 526 F.Supp. 809, 812 (S.D.Ohio 1981) (quoting, *Storer Broadcasting Co. v. American Federation of Television and Radio Artists*, 600 F.2d 45, 47 (6th Cir.1979)).

*Machinists and Aerospace Workers Lodge 2167 v. LeRoi Division*, 574 F.Supp. 380, 382, (S.D.Ohio 1983), *appeal docketed*, No. 83–3819 (6th Cir. Nov. 21, 1983). *See also, Morgan Services, Inc. v. Clothing and Textile Workers Local 323*, 724 F.2d 1217 at 1220–1221 (6th Cir.1984) (*Morgan Services*); *United Steelworkers v. Timken Co.*, 717 F.2d 1008, 1014–15 (6th Cir.1983).

In this case, as previously indicated, Plaintiff only relies on the first rationale, namely, that the arbitrator misconstrued and misapplied the plain language of Art. IV, § 1 of the CBA. Defendant argues that the arbitrator merely exercised his perogative to construe ambiguous contractual language.

■■ Before joining issue on that score, however, Defendant argues that the disputed provision of the CBA, Art. IV, § 1, only covers the acts of the *union* as an entity, not of the individual union members. Since Art. IV, § 1 only covers union behavior, and the record does not indicate any union involvement in or approval of the incident in question, Defendant concludes that there is not any way Ms. Day could have been found to have violated that provision.

The Court cannot agree with this syllogism. To be sure, when read literally, Art. IV, § 1 only covers acts by "the Union." However, a union only acts through its officers, stewards (like Ms. Day) and members, and the arbitrator considered, by implication, Art. IV, § 1 to cover acts by individual union members. This logic of this position is evident, as any CBA will bind a union *and* its members. *See, Du-*

*Quoin Packing Co. v. Meatcutters and Butcher Workmen Local P-156,* 321 F.Supp. 1230, 1233 (E.D.Ill.1971). *See also, Metropolitan Edison Co. v. NLRB,* —— U.S. ——, 103 S.Ct. 1467, 1475, 75 L.Ed.2d 387 (1983). Moreover, the arbitrator cited Art. IV, § 2, of the CBA, which expressly states that any violation "of this Article by an employee or employees shall constitute cause for discharge ...." Award at 5. Finally, the Union has not sought review of the arbitrator's decision, and can hardly be heard to now complain, indirectly, of a supposedly erroneous assumption of the arbitrator. For these reasons, the Court rejects the Union's threshold argument.

Turning to the principal issue presented, Plaintiff argues that the arbitrator ignored his own factual findings when applying Art. IV, § 1, of the CBA. The arbitrator found that Ms. Day was involved in some sort of confrontation with a supervisor, that this incident attracted the attention of fellow workers (who later walked out with her), and that her behavior was not justified. Hence, says Plaintiff, these acts violated the plain language of Art. IV, § 1, which "prohibits the causing of or participation in a work stoppage." Plaintiff's Memorandum Contra, Doc. # 5, p. 8. The arbitrator, in contrast, felt that almost "every act of insubordination" will cause some degree of interference with fellow workers, and that Art. IV, § 1, "must be read to infer an overt effort to seek or slow work or at least direct encouragement to do so, not mere distraction." Award at 9–10. Echoing the arbitrator, and the language of the CBA, the Union argues that Art. IV, § 1, was "obviously intended to prevent work stoppages due to *concerted* activities *between* the employees." Defendant's Motion, Doc. # 4, p. 12 (emphasis added).

■ As previously outlined, the law on this subject is clear. The arbitrator can construe ambiguous contract provisions, and the Court must defer to same "if there is any basis for that construction in the agreement." *Morgan Services,* at ——. However, the arbitrator "cannot ignore plain and unambiguous language" in the CBA. *Id.* at ——. The question of ambiguity, or lack thereof, is one for the reviewing court to make. *Id.* at —— – —— n. 8. Among the factors to consider in making this determination is to give the words of the CBA, like any other contract, "their ordinary and reasonable meaning," *id.* at ——, and to discern whether the arbitrator was able to posit reasonable, alternative meanings of supposedly "ambiguous" language. *Id.* at ——.

■ Applying these principles to the facts of this case indicates that the arbitrator's construction of Art. IV, § 1, should be upheld. On its face, the language of that provision refers to the union (read: employee) causing, authorizing, participating or condoning a work stoppage, "or *other concerted* interruption or interference with the business of company ...." (emphasis added). This language is indeed ambiguous: does it refer to an employee "causing" an interruption, irrespective of the intent of that employee, *or* does it only cover an "overt" or intentional effort by the employee to cause an interruption? The arbitrator considered both options but chose the latter.

This ambiguity is underscored by the reference to "concerted" acts in Art. IV, § 1. As noted by the Union, Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, permits employees to engage in "concerted activities for the purpose of collective bargaining ...." Courts and commentators are split on the meaning to be given "concerted." Some courts read "concerted" to cover *individual* activity by someone acting for himself or herself, as long as it is related to the CBA. *See, e.g., Interboro Contractors, Inc.,* 157 NLRB 1295 (1966), *enf'd,* 388 F.2d 495 (2d Cir. 1967). On the other hand, numerous decisions, including a line of cases from the Sixth Circuit, have rejected that view, holding that "concerted" acts only cover those made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement.

*Aro, Inc. v. NLRB*, 596 F.2d 713, 718 (6th Cir.1979). *Accord, Ajax Paving Industries, Inc. v. NLRB*, 713 F.2d 1214, 1217–18 (6th Cir.1983) (per curiam); *Music City Service, Inc. v. NLRB*, 705 F.2d 131, 133–34 (6th Cir.1983); *City Disposal Systems, Inc. v. NLRB*, 683 F.2d 1005, 1007 (6th Cir.1982) (per curiam), *cert. granted*, —— U.S. ——, 103 S.Ct. 1496, 75 L.Ed.2d 928 (1983).

Commentators have also noted this ambiguity. *See, e.g.*, R. Gorman, Basic Text on Labor Law, 299–300 (1976); B. Meltzer, Labor Law 200 (2d ed. 1977); Gorman & Finkin, *The Individual and the Requirement of "Concert" Under the National Labor Relations Act*, 130 U.Pa.L.Rev. 286 (1981); Note, *Protection of Individual Action as "Concerted Activity," Under the National Labor Relations Act*, 68 Cornell L.Rev. 369 (1983). The Supreme Court may soon resolve this ambiguity. *See, City Disposal Systems, Inc., supra*.

However the Supreme Court decides this statutory issue, said decision will not impact upon the instant action. The point is that the language of Art. IV, § 1, is ambiguous, and the arbitrator chose the meaning of "concerted" favored by the Sixth Circuit, that is, some requirement of "object," an "overt" act or intent to induce group action. Implicitly at least, the arbitrator found that Ms. Day had no such intent during the incident which led to her discharge (a factual finding not challenged by Plaintiff), and upheld the grievance on his construction of ambiguous contract language.

For these reasons, this Court finds that the arbitrator did have a "basis for [his] construction in the agreement," *Morgan Services*, at ——, and accordingly declines to vacate the arbitrator's award. Defendant's motion for summary judgment thus must be, and is, sustained.

## IV. *Attorney's Fees*

■ In its motion, the Union has also moved for an award of attorney's fees, since Plaintiff allegedly acted "without justification" and in "bad faith" in bringing this lawsuit to vacate the arbitration decision. The Court declines to honor this request. Initially, it should be noted that no award of attorney's fees are authorized under LMRA § 301. *See, Buckeye Cellulose Corp. v. United Auto Workers District 65*, 689 F.2d 629, 631 (6th Cir.1982) (per curiam). Defendant relies on an exception to this rule, permitting an award of fees for bad faith or unjustified conduct. However, merely losing a lawsuit seeking to vacate an arbitration decision does not mean the suit was brought in bad faith. *Kane Gas Light & Heating Co. v. Firemen & Oilers Local 112*, 687 F.2d 673, 683 (3rd Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1251, 75 L.Ed.2d 480 (1983). The legal issues presented by this case are somewhat close, and Defendant has pointed to no other alleged "bad faith" conduct by Plaintiff. In these circumstances, an award of fees is not justified. *See, Sugar Creek Packing, Inc., supra*, 526 F.Supp. at 815.

## V. *Conclusion*

For the above stated reasons, this Court concludes that the arbitrator's decision at issue should not be vacated. Accordingly, Defendant's motion for summary judgment is sustained. However, the Court does not sustain Defendant's request for attorney's fees. Plaintiff's motion to vacate the arbitration award is overruled.

Judgment is to be entered for Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.