600 F.2d 45
 101 L.R.R.M. (BNA) 2497, 86 Lab.Cas. P 11,352
 STORER BROADCASTING COMPANY, Plaintiff-Appellant,
v.
AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS,
CLEVELAND LOCAL, AFL-CIO, and American Federation
of Television and Radio Artists,
Defendants-Appellees.
 No. 77-3360.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 11, 1979.
Decided June 7, 1979.
 
 F. Wilson Chockley, Jr., Michael T. McMenamin, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for plaintiff-appellant.
 Thurlow Smoot, Cleveland, Ohio, for defendants-appellees.
 Before CELEBREZZE and ENGEL, Circuit Judges, and PECK, Senior Circuit judge.
 CELEBREZZE, Circuit Judge.
 
 
 1
 Plaintiff-appellant, Storer Broadcasting Company, appeals from an adverse decision by the district court in this action to vacate an arbitrator's award. The arbitration, initiated by the American Federation of Television and Radio Artists ("the union"),[1] yielded an award in favor of union members in a dispute concerning payments due from Storer's profit sharing plan. Finding no evidence in the record to support the arbitrator's findings, we reverse the district court's refusal to vacate the award.
 
 
 2
 Storer operates a radio station, WJW-AM, and television station, WJW-TV, in Cleveland. For many years prior to 1973 Storer had made voluntary payments into its profit sharing plan[2] on behalf of the employees involved in this dispute. The profit sharing plan was operated as a separate trust administered by an independent trustee who was not a party to the arbitration or this action. In 1973 Storer and the union entered into collective bargaining agreements[3] which required Storer instead to make contributions on behalf of these employees into the union's pension and welfare plan. The union agreed that its members would cease to participate in all aspects of the Storer profit sharing plan. This portion of the 1973 agreements concluded: "The Union represents that it has fully disclosed to its members the benefits being given up by its members in consideration for the Company's contribution to the AFTRA P & W fund and indicates that this arrangement is fully acceptable to the Union and its members."[4]
 
 
 3
 In early 1974, the employees covered by these collective bargaining agreements were advised by the Storer profit sharing plan trustee that they would receive the amounts that had "vested" in their favor, as set forth in the profit sharing plan agreement. Thirteen employees accepted checks in these amounts. Seven employees rejected such checks and demanded payment of the full amounts "credited" to their accounts, which was a larger sum. Storer refused to pay such additional amounts.
 
 
 4
 The union took the matter to an arbitrator,[5] who initially ruled that the matter was arbitrable between the union and Storer even though Storer claimed it had no control over the profit sharing plan trustee and was not entitled to receive any sums back from the trust when an employee left the plan's coverage. On the merits, the arbitrator construed the language quoted above[6] as binding Storer to whatever reasonable interpretation the union had made and communicated to its members concerning their rights upon termination of their participation in the Storer profit sharing plan. Pursuant to this construction, the arbitrator made a factual finding that the union had represented to its members that they would receive all amounts credited to their accounts, not just vested amounts. Thus, the arbitrator entered an award in favor of the seven employees who had claimed they were entitled to such credited amounts.[7]
 
 
 5
 Storer filed an application in the district court to vacate the award on the grounds that there was no evidentiary support for the arbitrator's finding that the union had represented to its members that they would receive the credited amounts. The district court noted that "the arbitrator's decision does not clearly indicate the basis upon which (this) finding (was) predicated." The court ordered a limited remand to allow the "arbitrator to state in writing the factual predicate upon which he based his conclusion that the local union had advised its members that they would receive full payment upon termination of participation" in the profit sharing plan.
 
 
 6
 In response to the remand, the arbitrator informed the court that "since the Union's version of how the affected employees should be paid out upon cessation of participation seemed more logical than the Company's version, the arbitrator concluded that it was the Union's version which was related, or disclosed, to the members of the two bargaining units." The arbitrator also reasoned that the union must have told its members that they would receive the full credited amounts because otherwise the seven members would not have objected to receiving only the vested amounts. The arbitrator cited nothing in the record supporting his factual finding that the union had so informed its members.
 
 
 7
 The district court then reviewed the case, granted the union's motion for summary judgment, and dismissed Storer's application. The court reasoned that the "arbitrator was entitled to draw reasonable inferences and conclusions from the agreement in evidence before him."
 
 
 8
 It is very well settled that the courts are generally required to refrain from reviewing the merits of an arbitrator's award due to the policy favoring arbitration as a means of resolving labor disputes. This was established in the Steelworkers Trilogy[8] and has been applied numerous times by this court.[9] But there are at least two important exceptions to this general rule.[10] First, "the arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." Detroit Coil Co. v. Int'l Ass'n of Machinists, 594 F.2d 575, 579 (6th Cir. 1979), Citing cases. Thus, the courts are empowered to set aside an award if the arbitrator exceeds these confines. Second, "although a court is precluded from overturning an award for errors in the determination of factual issues, '(n)evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated.' " Id. at 580-81, Citing NF & M Corp. v. United Steelworkers of America, 524 F.2d 756, 760 (3d Cir. 1975). See also Timken Co. v. Local Union No. 1123 United Steelworkers of America, 482 F.2d 1012, 1014-15 (6th Cir. 1973).
 
 
 9
 Storer has not argued that the arbitrator went beyond the plain meaning of the contract in construing it to bind Storer to pay to the union's members whatever amounts the union reasonably represented to them that they would receive.[11] Rather, Storer has contested only the arbitrator's factual finding that the union did indeed represent to its members that they would receive the credited amounts in their profit sharing accounts.
 
 
 10
 We agree with Storer that there is absolutely no evidentiary support in the record before the arbitrator for this factual finding. Our search of the record revealed no testimony or documentary evidence to this effect. The union's brief to this court has pointed to no such evidence in the record.
 
 
 11
 The arbitrator himself, in the face of a specific request from the district court, could cite no factual support for his finding. Instead, the arbitrator was reduced to arguing that the union must have disclosed to its members that they would receive the credited amounts because that was "more logical." While logic can be helpful to supplement evidence or to draw inferences from evidence, it cannot substitute for evidence.[12]
 
 
 12
 The arbitrator also reasoned that the union must have disclosed that its members would receive the credited amounts because otherwise the seven union members would not have objected when offered only the vested amounts. Putting aside the fact that almost twice as many union members accepted the vested amounts, we think this reasoning by the arbitrator proves too much. Initially, common sense teaches that the mere fact that a dispute has arisen does not weigh in favor of either party in resolving the dispute. More importantly, the mere fact that a dispute has arisen cannot substitute for evidence on the issues involved in the dispute.[13]
 
 
 13
 It is apparent that rather than base his award on evidence in the record, the arbitrator "dispense(d) his own brand of industrial justice."[14] This he cannot do.
 
 
 14
 Since the union's and its members' real dispute is with the profit sharing plan trustee, who was not a party to the arbitration or this action, our disposition is without prejudice to whatever legal rights they may be able to assert against the trustee or the plan's administrative committee pursuant to the dispute resolution mechanism set forth in the profit sharing plan.
 
 
 15
 The judgment of the district court is reversed and the cause is remanded to that court with directions to vacate the award of the arbitrator and for further proceedings consistent with this opinion.[15]
 
 
 16
 PECK, Senior Circuit Judge, dissenting.
 
 
 17
 As noted by the majority opinion, federal courts set aside the awards of labor arbitrators only in a limited number of circumstances. One such circumstance, and the one appellant argues is now before this Court, occurs when an arbitrator renders a decision that is not based on the evidence presented. The majority opinion concludes that there was "absolutely no evidentiary support" for the arbitration award in dispute. I can not agree.
 
 
 18
 The substance of the present appeal resolves into a single issue.[1] The arbitrator found that appellee union had disclosed to its members that they would receive all amounts credited to their pension accounts, not merely vested amounts,[2] pursuant to the 1973 collective bargaining agreements with Storer Broadcasting. Was there evidence before the arbitrator to support this finding? In response to an inquiry by the district court, the arbitrator stated that he had based his finding on two grounds. First, the fact that seven of the twenty union members had refused to settle for the lesser vested amounts suggested to the arbitrator that the union had informed its members that they would receive the larger credited amounts. Admittedly, this evidence is of marginal weight; however, it is not totally specious, as suggested by appellant. Second, the arbitrator reasoned that it was "logical" that the union had informed its members that the 1973 collective bargaining agreements required disbursement of all credited pension benefits. On this second ground, and contrary to the suggestion made by the majority opinion, the arbitrator was applying more than simple, abstract logic. In the pension plan agreement whose benefits are the subject of this appeal, it was provided that an employee would receive only a vested amount of his pension benefits, less than 100%, if he terminated his employment prior to the completion of his ninth year.[3] This type of vesting schedule can be viewed either as a "penalty" for an employee who terminates his employment "early," or as an incentive for an employee to extend his years of service. In addition, the same pension plan agreement provided that if the pension plan itself was dissolved, all employees would receive their full credited amounts, not merely their vested shares.[4] In light of the fact that the pension plan was discontinued and superceded by another pension plan, and in light of the fact that all employees involved were continuing in their employment at Storer, the arbitrator resolved the dispute between the union and Storer, by drawing an analogy to the provision in the pension plan agreement relating to plan termination. He stated:
 
 
 19
 "Although there are no specific provisions in the profit sharing plan which would govern a distribution of funds under the circumstances present in this case, Section 6.9, Vesting on Termination of the Plan, is the one section which comes nearest to providing a solution of this issue. Specifically, sub-paragraph 2, provides for termination of participation in the plan by a subsidiary. Each of the two bargaining units with which we are involved here, may, in the opinion of the arbitrator, be considered to be analogous to a subsidiary within the Company and therefore, when the members of the two bargaining units ceased to participate in the Company's profit sharing plan, on the basis of the entirety of each bargaining unit, each bargaining unit could be compared to a subsidiary of the Company. The type of termination in such instance, is most closely aligned to the termination of participation which is involved in this case, and such similarly would seem to be reasonable."
 
 
 20
 Accordingly, the arbitrator found it "logical" that Storer had agreed to pay the full credited amounts, as it would have done under the plan termination provision, and that the union had so advised its members. In my mind, the arbitrator's logic amounted to a reasonable inference. Not only Should the parties have agreed to a disbursement of the full credited amounts, but, based on their previous dealings under the discontinued pension plan, it was reasonable for the arbitrator to find that the parties Had in fact agreed to such terms. As did the district court, I conclude that, from adequate evidence, the arbitrator drew acceptable inferences and made proper factual findings.
 
 
 
 [1]
 Both the Cleveland Local and the national union were defendants in the action below, while the arbitration appears to have been initiated by only the local union. Both were parties to the relevant collective bargaining agreements with Storer
 
 
 [2]
 The profit sharing plan included other welfare and insurance programs
 
 
 [3]
 There were separate agreements for the radio and television stations, but they were identical insofar as relevant here
 
 
 [4]
 P 34, WJW-AM Agreement; P 33, WJW-TV Agreement
 
 
 [5]
 Both agreements contained a provision requiring arbitration of disputes arising thereunder. The arbitrator was Mr. Charles F. Ipavec of the American Arbitration Association
 
 
 [6]
 See note 4, Supra, and accompanying text
 
 
 [7]
 The thirteen other employees were held to have been estopped by accepting their checks for the vested amounts
 
 
 [8]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [9]
 See most recently Detroit Coil Co. v. Int'l Ass'n of Machinists, 594 F.2d 575 (6th Cir. 1979); General Drivers, Warehousemen and Helpers' Local Union No. 89 v. Hayes & Nicoulin, Inc., 594 F.2d 1093 (6th Cir. 1979)
 
 
 [10]
 See 9 U.S.C. § 10
 
 
 [11]
 While a portion of Storer's brief to this court could be construed as so arguing, counsel conceded at oral argument that Storer was only contesting the arbitrator's factual findings. While we express no opinion on the matter, we note that Storer could have at least made a plausible argument that this construction of the contract exceeded its plain meaning. Storer could have made an even stronger argument that the arbitrator exceeded his authority in binding Storer to pay amounts due, if at all, from the profit sharing plan trustee. Since Storer did not make these arguments, we do not address them
 
 
 [12]
 The district court, in ruling that the "arbitrator was entitled to draw reasonable inferences and conclusions from the agreement in evidence before him," allowed such "inferences" to support both the arbitrator's construction of the contract And his factual findings. They could support only the former
 The dissent would allow the arbitrator to make factual findings based upon "logical inferences." The dissent points to the provisions of the pension plan agreement, none of which are directly applicable to this case, from which it can be argued that it was "more logical" that the union had informed its members that they would receive their credited amounts. But this misses the point. The arbitrator was construing the collective bargaining agreement, not the pension plan agreement, and he construed the collective bargaining agreement to bind Storer to whatever the union represented to its members. Thus, the issue is not what representation would be "more logical;" if it were, we might agree with the dissent. Rather, the issue is what representation was Actually made and there is absolutely no record evidence that the union represented that its members would receive their credited amounts. The dissent appears to concede as much since it cites no such evidence. If we were to allow an arbitrator to make a factual finding that a certain event occurred based upon an inference that said event Should have occurred because an ambiguous document can be construed to make said event "more logical," then we would reduce the requirement that arbitration awards be supported by at least some evidence to a meaningless recitation which could easily be avoided by a clever arbitrator. This we decline to do.
 Similarly, the union's brief to this court argues that the arbitrator was allowed to "presume" that the union had informed its members they would receive the credited amounts. This confuses contract interpretation with factual findings. A presumption allows a tribunal to infer one fact from another fact proven in the case. It does not allow a tribunal to infer one fact from a construction of ambiguous contractual language. If it did, no arbitration award would have to be supported by evidence since all evidentiary findings could stem from the collective bargaining agreement.
 
 
 [13]
 If the mere fact that a party believes he has been wronged were held sufficient evidence to prove that he has indeed been wronged, then the requirement that arbitration awards be supported by at least some evidence would be completely hollow
 
 
 [14]
 Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361. See also Detroit Coil Co., supra, 594 F.2d at 579
 It is particularly apparent that the arbitrator "dispense(d) his own brand of industrial justice" here since he adopted a construction of the collective bargaining agreement urged by neither party to the arbitration.
 
 
 [15]
 While the case was disposed of below on the union's motion for summary judgment, there is no need for a trial since Storer also filed a motion for summary judgment and there were no material factual disputes
 
 
 [1]
 See note 11, majority opinion, and accompanying text
 
 
 [2]
 The pension plan that was discontinued by the 1973 collective bargaining agreements contained the following provisions:
 "Article VI: Vesting and Forfeiture
 Sec. 6.1 Vesting on Termination of Employment. Upon Termination of a Participant's Employment by the Company and all of its Subsidiaries for any reason other than retirement, death, or total and permanent disability, the Vested Amount of any Participant's Account shall be a percentage of the total amount credited to his account, determined as of the effective date of termination of his participation under Sec. 4.5, on the basis of the number of completed years that such Participant has been a Participant, according to the following vesting schedule. (Emphasis added.)
 Vesting Schedules
Completed Years Percent of
of Participation Account Vested
---------------- --------------
 Less than 1 0%
 1 20%
 2 30%
 3 40%
 4 50%
 5 60%
 6 70%
 7 80%
 8 90%
 9 100%
 
 
 [3]
 Id
 
 
 [4]
 The discontinued pension plan provided as follows:
 "(2) Termination of Participation in Plan by a Subsidiary. If a Participating Subsidiary shall withdraw from the Plan and terminate its participation under the provisions of Sec. 10.4, Then the entire amount credited to each Participant under the Employer Account of such Subsidiary Shall be vested and non-forfeitable as of the close of the year of such termination of participation by the Subsidiary, subject to the adjustment under Sec. 5.7, to forfeiture under Sec. 6.10 or 6.11, if applicable and to adjustment for a proportionate share of the expenses of distribution incurred by the Trustee in connection with the termination of the participation of such Subsidiary. Such vested and non-forfeitable accounts shall mature and shall become payable in accordance with the provisions of Article VII. Such accounts which have not matured and become payable under Sec. 7.1, because the Participant remains in the employ of the Company or any Subsidiary, shall be classified as non-forfeitable Active Participants' Accounts, as defined in Sec. 5.1(1), in the event the new Employer is the Company or a Participating Subsidiary, or as non-forfeitable Deferred Participants' Accounts, as defined in Section 5.1(1), in the event the new Employer is the Company of a Participating Subsidiary, or as non-forfeitable Deferred Participants' Accounts, as defined in Sec. 5.1(4), in the event that the new Employer is a non-participating Subsidiary. Such non-forfeitable accounts shall be handled by the Trustee in accordance with Secs. 6.9(3) and 6.9(4)." (Emphasis added)