904 F.2d 708
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PARKE-DAVIS DIVISION, WARNER LAMBERT COMPANY, Plaintiff-Appellant,
v.
LOCAL 7-176, OIL, CHEMICAL AND ATOMIC WORKERS, Defendant-Appellee.
 No. 89-1987.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1990.
 
 Before BOYLE F. MARTIN, Jr., and RALPH B. GUY, Jr., Circuit Judges, and DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff, Parke-Davis (employer), appeals from an order denying its request to set aside a labor arbitration award.[1] The employer contends on appeal, as it did before the district court, that the arbitration award did not draw its essence from the collective bargaining agreement. Upon a review of the record, we find the employer's contention to be without merit, and we will affirm.
 
 I.
 
 2
 Marvin Patterson, a ten-year employee of Parke-Davis was discharged on April 1, 1987, for repeated tardiness and absenteeism. Specifically, Patterson was charged with three instances of tardiness in the month of March 1987. A grievance was immediately filed by Patterson and Local 7-176 (the Union). The grievance was not resolved in the first four steps of the parties' grievance procedure and was submitted to arbitration pursuant to the provisions of the existing collective bargaining agreement (CBA). The stipulated issue submitted to the arbitrator was whether or not the grievant was discharged for just cause.
 
 
 3
 On August 10, 1988, the arbitrator found that the discharge was inconsistent with a disciplinary policy established in 1956 and never changed through the collective bargaining process. The discharge was reduced to a 90-day suspension without pay, and the employer was ordered to reinstate Patterson.[2] The employer refused to do so and, instead, instituted this action.
 
 II.
 
 4
 As the Supreme Court recently reaffirmed, the power of the courts to review arbitral awards has been narrowly circumscribed:
 
 
 5
 The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.
 
 
 6
 United Paperworks Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Vic Wertz Distrib. Co. v. Teamsters Local 1038, No. 89-1567, slip op. at 11 (6th Cir. March 22, 1990). Provided an arbitrator's award " 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." Misco, 484 U.S. at 36 (quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).
 
 
 7
 This is not to say that the arbitrator is free to disregard the contract he is charged with interpreting and which defines his powers; as the Court made clear in Misco, "the arbitrator may not ignore the plain language of the contract." 484 U.S. at 38 (citation omitted). Nevertheless, the burden of showing that the arbitration award has not "drawn its essence from the collective bargaining agreement" is great, for "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38.
 
 
 8
 The CBA that was in effect between the parties was consistent with the philosophy that all disputes should be resolved through the arbitral process and that that process should be final. Article III Sec. 1 of the CBA provides that "any grievance" may be resolved through a procedure culminating in arbitration. Article III Sec. 3 of the CBA expressly allows the arbitrator to "modify penalties assessed by the management in disciplinary discharges and layoffs." Article III Sec. 7 of the CBA further provides that "[t]he Company delegates to the arbitrator full discretion in cases of discipline for violation of shop rules." Additionally, Article III Sec. 11 of the CBA provides that:
 
 
 9
 There shall be no appeal from any arbitrator's decision. Each such decision shall be final and binding on the Union and its members, the employee or employees involved, and the Company. The Union will discourage any attempt of its members in any appeal to any court or labor board from a decision of the arbitrator.
 
 
 10
 Given the language of the CBA and the clear case law, one challenging an arbitrator's decision must do more than simply incant that the decision does not draw its essence from the collective bargaining agreement. To that end, the employer contends that the arbitrator was wrong when he concluded that there was an existing policy on absenteeism dating to 1956, which could only be revoked bilaterally through the collective bargaining process or unilaterally by the employer after impasse. This contention raises two questions: Was the arbitrator wrong and, if so, what are the consequences of his error? We address these questions collectively.
 
 
 11
 The determination that there existed an absenteeism policy dating back to 1956 is a factual one. If we were reviewing a lower court's factual determination, it would be under the quite narrow "clearly erroneous" standard. Our review of an arbitrator's factual determination is considerably more restricted, however. We may not vacate the award if the arbitrator is "arguably applying the Agreement," Local 120 v. Brooks Foundry, Inc., 892 F.2d 1283, 1287 (6th Cir.1990), between the parties even if we are convinced he has committed a "serious error." Misco, 484 U.S. at 38.
 
 
 12
 The employer contends that the arbitrator was not "arguably applying the Agreement" because the CBA contemplates that the arbitrator will consider the dispute before him to be the "grievance" that has gone through the various steps of the parties' grievance procedure and has remained unresolved. Here, according to the employer, the arbitrator changed the issue from "was the grievant discharge for just cause" to "whether a disciplinary policy existed in December, 1987 [sic] which [was] in conflict with the policy applied to Marvin Patterson." Unlike the employer, we do not view this as a change in the issue. Although it is true that the issue as to the existence of the 1956 policy was not injected into the grievance procedure until the third step, it was part of the record when the matter came before the arbitrator. The issue of "just cause" cannot be decided in a vacuum. If an employee is discharged in violation of an extant policy, the arbitrator can certainly factor that into the "just cause" calculus. We thus conclude that the arbitrator was applying the CBA.
 
 
 13
 Turning now to the alleged erroneous factual finding, we first note that the requirement that a reviewing court overlook even serious errors is not a doctrine without its limits. In Storer Broadcasting v. American Federation of Television and Radio Artists, 600 F.2d 45 (6th Cir.1979), we stated:
 
 
 14
 "[A]lthough a court is precluded from overturning an award for errors in the determination of factual issues, '[n]evertheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated.' "
 
 
 15
 Id. at 47 (citations omitted) (quoting Detroit Coil Co. v. Int'l Ass'n of Machinists, 594 F.2d 575, 580-81 (6th Cir.), cert. denied, 444 U.S. 840 (1979).
 
 
 16
 The employer argues, consistent with Storer Broadcasting, that there is no support for the arbitrator's conclusion as to the 1956 CBA. We disagree. The record is admittedly murky on this point, but that is precisely the type of situation which triggers the concept of deference to the arbitrator. The record contains the report and resolution of numerous grievances between 1956 and the date of Patterson's discharge that discuss the question of the employer's absenteeism policy. Although one of the decisions reaches a contrary conclusion, the thrust of the remaining decisions is to the effect that the employer did have an existing policy. There was also testimony, again less than clear, from union officials indicating the existence of a policy considerably predating Patterson's discharge. It is apparent that the arbitrator did not make up the 1956 policy out of whole cloth, but had record evidence to support his conclusion.
 
 
 17
 The employer is hard put to argue seriously that there was not a 1956 policy; the better argument though is that, although it may have been formulated, time and practice have eroded it out of existence. Indeed, the arbitrator himself stated:
 
 
 18
 Notwithstanding the position of the Union, since the last Haughton decision, the 1956 policy has been more honored in its breach than its observance. Marvin Patterson is a good example. He has repeatedly been disciplined, and put "on the program," and this program is at variance with the '56 policy.
 
 
 19
 I disagree with the union claim that Marvin Patterson's discharge, and the January 1987 policy, are the first that it has ever seen of variations from the 1956 policy.
 
 
 20
 (App. 67). What convinced the arbitrator to nonetheless conclude that there was an existing policy was the fact that if it had been replaced at all, it was by a practice of ad hocism. The arbitrator's opinion states:
 
 
 21
 B. Factors opposing discharge: (1) the existence of a totally individualized ad hoc program is the very antithesis of consistent treatment, especially since this program has had only loose guidelines as limitations on its operation; and (2) Grievant was fired based upon a standard (more than two tardies in one month) that was at variance with the 1956 policy (more than three). While the continued status of the 1956 policy is a matter of doubt, its past history is indisputable.
 
 
 22
 (App. 68). Although the above is less than a model of clarity, we do not find it to be the imposition of the arbitrator's own brand of industrial justice.
 
 
 23
 If we were to employ our own brand of industrial justice here, the employer would probably win. Patterson had serious attendance problems. As the arbitrator stated:
 
 
 24
 For the four years preceding his discharge, Grievant was often absent, tardy, or took early departures. Consequently, he was counseled, warned and disciplined because of a continued unacceptable attendance record. On August 28, 1984, he was given a 30 day disciplinary suspension, but was permitted to return after 26 days.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 During August, 1986, Grievant was absent twice and tardy once. He was given a three day disciplinary suspension on September 11, 1986. The same standards and [sic] were again set forth. There was no grievance filed or objection made.
 
 
 28
 The following month, September, 1986, Grievant continued to have problems. Therefore, on October 8, 1986, he was given a thirty day disciplinary suspension for being absent on three days, failing to properly notify his supervisor of two of those absences, and being tardy on two additional days....
 
 
 29
 (App. 57, 58).
 
 
 30
 It may well be that the employer's approach of individual counselling that was applied to Patterson is more humane and even more lenient than a rigid, fixed attendance policy; but, that is not for us or the arbitrator to decide. The employer was on notice for many years that its attendance policy, or lack thereof, was the subject of dispute in a number of grievances. It would have been easy enough to put this issue on the bargaining table and either hammer out an agreed upon policy or, failing that, to unilaterally adopt one in the face of an impasse. This was not done. As long as it continues to be a gray-area issue, the arbitrator will have the last word.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation
 
 
 [1]
 This matter was resolved in the district court on cross-motions for summary judgment which were submitted to a magistrate for initial consideration. The report and recommendation of the magistrate was adopted by the district court after it considered and rejected the employer's objections
 
 
 [2]
 The order provided, however, that Patterson be reinstated at the final step under the 1956 policy, meaning that his next violation would merit discharge